UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

OWNER-OPERATOR INDEPENDENT
DRIVERS ASSOCIATION, INC.,
ICEHOUSE CARTAGE EXPRESS, INC.,
GRAIN EXPRESS, INC., and NORTHSTAR
EXPRESS, individually, and on behalf of all
others similarly situated,

           Plaintiffs,

-vs-                                       Case No. 5:05-cv-440-Oc-10GRJ

4 POINTS LOGISTICS, LLC and
COMPOSITE ANALYSIS GROUP, INC.,
d/b/a LIPSEY MOUNTAIN SPRING
WATER,

           Defendants.
_____/

## O R D E R

This case is before the Court for consideration of the Plaintiffs' Motion for Preliminary Injunction Against Defendant 4 Points Logistics, LLC (Doc. 2), to which the Defendant has responded (Doc. 20). A hearing was held in this matter on December 6, 2005, pursuant to Fed. R. Civ. P. 65 and Local Rule 4.06. Accordingly, upon due consideration the Plaintiff's Motion is due to be denied.

**Background**

The following relevant facts are set forth in the Plaintiffs' Complaint. The Plaintiffs, three small business trucking firms and a national trade association of professional truck drivers, initiated this action on October 26, 2005 with the filing of a Class Action Complaint

(Doc. 1). The Plaintiffs purport to represent a putative class of hundreds of small business trucking firms and drivers who entered into contracts with Defendant 4 Points Logistics, LLC ("4 Points"), a federally licensed transportation broker, to transport ice and water to victims of Hurricane Katrina in the Florida Gulf Coast area. Defendant Lipsey Mountain Spring Water ("Lipsey Water") had previously entered into two contracts with the State of Florida to provide the ice and water to Hurricane Katrina victims, and Lipsey Water in turn engaged the services of 4 Points to broker the services of the necessary refrigerated trucks and drivers to transport the ice and water.

In order to provide such large quantities of ice and water to widespread disaster areas, the parties arranged for trucks carrying ice and water to travel to Stennis NASA Center in Mississippi and wait there on standby until they were dispatched to specific victim locations. Lipsey Water's contracts with the State of Florida provided for the payment to Lipsey Water of $1,600 per truck per day for "drayage," which was intended to cover activities between the time the loaded trucks arrived at Stennis NASA Center, and the time they were redeployed to a specific location of need. The State of Florida contracts also provided for an additional $403.00 per truck to cover the cost of renting "Mobile Refrigerated Units" for those trucks hauling ice.

On behalf of Lipsey Water, 4 Points entered into agreements with the Plaintiffs and other putative class members to pay them, among other amounts, $60 per hour for "drayage" (or, as the parties call it in their contracts, "Detention/Delay"). According to the Plaintiffs, there was no hour limitation on this payment - in other words, 4 Points would

compensate the Plaintiffs for up to 24 hours per day for an unlimited period of time, until the delay ceased. 4 Points, however, asserts that this Detention/Delay payment did have an hour limitation, and on September 22, 2005, 4 Points notified all trucking companies and drivers that their detention fees would be limited to $60 per hour for up to 10 hours per day.

The Plaintiffs allege that this limitation on detention fees constitutes a breach of its contracts with 4 Points, and in Count III of their Complaint, seek declaratory and injunctive relief, as well as monetary damages from 4 Points. In Counts IV and V of their Complaint, the Plaintiffs also claim a third-party beneficiary interest in the contracts between Lipsey Water and the State of Florida and seek similar relief from Lipsey Water. The Plaintiffs have also brought two Counts against 4 Points alleging violations of various federal regulations with respect to 4 Points' brokerage services to Lipsey Water.[1]

Following the completion of their motor carrier services, the Plaintiffs and other putative class members began to seek payment from 4 Points. According to the Plaintiffs, 4 Points has tendered checks to several of the named Plaintiffs as well as several putative class members for less than the amount the Plaintiffs claim is due to them under their contracts (including their alleged third-party beneficiary interest in Lipsey Water's state

---

[1] In Count I of their Complaint the Plaintiffs allege that 4 Points spent significant time and effort obtaining bagged ice from other vendors around the nation, thereby itself fulfilling a crucial aspect of Lipsey Water's contract with the State of Florida. According to the Plaintiffs, 4 Points thus acquired a "material beneficial interest" in the shipment of ice on behalf of Lipsey Water, and therefore was precluded from charging any brokerage fees as directed by 49 C.F.R. § 371.9(a). In Count II of their Complaint, the Plaintiffs claim that 4 Points has refused to allow the Plaintiffs to inspect its records for each of the brokered transactions, as required by 49 C.F.R. § 371.3.

contracts). With each check tendered, 4 Points has included a special endorsement, which states:

> Any difference between Tariff Rate and Rate Paid will be considered Commission. Endorsement of this check by Payee or its Agent constitutes PAYMENT IN FULL.[2]

The Plaintiffs now seek an injunction both preventing 4 Points from including this special endorsement on any and all checks tendered to Plaintiffs, as well as all putative class members, resulting from the contracts at issue in this litigation, and further seek an order from this Court directing 4 Points to notify all Plaintiffs and putative class members who have already received a check with such an endorsement that the endorsement is of no effect.

## Discussion

A preliminary injunction is "an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion on each of [the] prerequisites."[3] The prerequisites to granting a preliminary injunction are: (1) that there is a substantial likelihood plaintiff will prevail on the merits; (2) that there is a substantial threat plaintiff will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the plaintiff outweighs the threatened harm the injunction may do to the

---

[2] See Sample Check, attached as Ex. G to the Plaintiffs' Motion for Preliminary Injunction.

[3] Suntrust Bank v. Houghton Mifflin Co., 525 F.3d 1165, 1166 (11th Cir. 2001).

opposing parties or others; and (4) that granting the preliminary injunction will not disserve the public interest.[4]

Having heard argument by both parties and upon review of the papers filed in this matter, the Court finds that the Plaintiffs have not clearly carried their burden of persuasion. With respect to the first element (Plaintiff's substantial likelihood of success on the merits), in order to establish that the special endorsements attached to 4 Points checks are invalid, the Plaintiffs will have to prove, in part, that 4 Points did not tender the checks to the putative class members "in good faith." See Fla. Stat. § 673.3111(1).[5] The Plaintiffs have argued that 4 Points' actions were not taken in good faith, and at some point during the course of this litigation, (specifically after discovery), the Plaintiffs may be able to establish that 4 Points did not, in fact, act in good faith in tendering these checks.[6]  If so, the named Plaintiffs and/or some of the putative class members may well ultimately be entitled to some relief with respect to the legal efficacy of the special endorsements.  However, the

---

[4] Id.  See also United States v. Jefferson County, 720 F.2d 1511, 1519 (11th Cir. 1983); Rule 4.05(b)(4) of the Local Rules of the Middle District of Florida.

[5] See also Advanced Tech. Assoc., Inc. v. Herley Ind., Inc., Case No. 96-132, 1998 WL 633983 (E.D. Pa. Aug. 24, 1998). Although the Plaintiffs stated at the hearing that they are not entirely sure Florida law will apply as to this issue with respect to every putative class member, all Parties have relied on Florida law for purposes of the this preliminary injunction request. The Court will therefore refer to Florida law concerning endorsements for the purposes of resolving the Plaintiffs' preliminary injunction request only, and makes no ruling at this stage of the litigation as to whether Florida law will apply to this, or any other issue in this case.

[6] Of course this assumes that 4 Points will raise these special endorsements as an affirmative defense in this case. At this early stage, 4 Points has not yet filed its answer to the complaint.

Court need not explore whether the Plaintiffs have a "substantial likelihood" of success on the merits of this issue because it seems clear to the Court that the Plaintiffs have not met at least two of the remaining three prerequisites to the issuance of a preliminary injunction.

It is immediately apparent that the Plaintiffs have failed to establish the second prerequisite for preliminary injunctive relief: the Plaintiffs cannot prove that they will suffer any irreparable harm if 4 Points continues to use these special endorsements. To demonstrate irreparable harm, a plaintiff must show that it has no adequate remedy at law, meaning that its injury "cannot be undone through monetary remedies."[7] The Plaintiffs attempt to meet their burden by arguing that if 4 Points is allowed to continue using these special endorsements, some of the putative class members (who are not represented by counsel) will refrain from cashing their checks for fear of forfeiting their rights to seek further relief in this or some other litigation. Such putative class members, who are typically small businesses with thin profit margins, will suffer "significant economic hardship."[8] However, this does not rise to the level of irreparable harm such that preliminary injunctive relief is warranted.

The right to pursue the "further relief" the Plaintiffs and putative class members are afraid of losing is simply the ability to pursue additional <u>monetary damages</u> under the terms of their contracts with 4 Points and perhaps Lipsey Water. Thus, any "economic hardship"

---

[7] <u>Cunningham v. Adams</u>, 808 F.2d 815, 821 (11th Cir. 1987) (citing <u>Cate v. Oldham</u>, 707 F.2d 1176, 1189 (11th Cir. 1983)).

[8] <u>See</u> Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction (Doc. 3) at 7.

or other injury suffered by the Plaintiffs and/or putative class members "would be sufficiently calculable so that if the Plaintiffs were to prevail on the underlying claims it could be properly redressed with money damages."[9]

If, for example, the Court ultimately determines that the special endorsements are ineffective and invalid, those who have cashed checks containing the endorsement will be able to seek further monetary damages.  Similarly, those putative class members who refuse to cash checks with these special endorsements will also be able to seek monetary damages for the full amount claimed to be due.  On the other hand, if the Court ultimately determines that the special endorsements are valid and enforceable, then the putative class members who have received and cashed checks from 4 Points will have been fully compensated and not entitled to any further relief.  In short, an adequate remedy at law exists for all of the Plaintiffs' and putative class member's alleged harm - monetary damages.

Second, the Plaintiffs have not satisfied the Court that the threatened injury to the Plaintiffs and putative class members outweighs the threatened harm the injunction may do to the Defendant as well as to other putative class members.  In particular, the Court is concerned that the requested injunctive relief would severely harm the ability of both the putative class members and 4 Points to enter into and negotiate contracts - specifically settlements of the instant dispute.  There is evidence that numerous members of the

---

[9] Morris Communications Corp. v. PGA Tour, Inc., 117 F. Supp.2d 1322, 1330 (M.D Fla. 2000).

putative class have demanded payment from 4 Points, and several others have engaged in and/or completed settlement negotiations with 4 Points, and have accepted and cashed checks tendered by 4 Points with the special endorsement. Thus, it is likely that there are other members of the putative class who are likewise willing to negotiate a settlement with 4 Points, which would include the special endorsement at issue here and a waiver of their rights to seek further relief. If the Court were to grant the injunctive relief requested, it would hamper these putative class members' and 4 Points' ability to negotiate such settlements.[10]

More importantly, if the Court were to issue the requested injunctive relief and prohibit use of the requested endorsement, there is nothing prohibiting 4 Points from electing to cease issuance of any checks until this litigation is fully and finally resolved. Such a result is obviously one that even the named Plaintiffs would deplore.[11]

---

[10] This circumstance also suggests a probable conflict of interest between members of the putative class as defined in the Complaint and that, in turn, strongly suggests that class based injunctive relief is presently inappropriate.

[11] In addition, should 4 Points cease to settle claims with the putative class members due to its inability to use the special endorsement, Lipsey Water has argued that it will also negatively impact its ability to obtain payment from the State of Florida, and, in turn, transfer those funds to 4 Points under its brokerage contracts with Lipsey Water.

**Conclusion**

Given the Plaintiffs' inability to establish both that the Plaintiffs and putative class would suffer irreparable harm, and that the harm to the Plaintiffs and putative class would outweigh the harm to others if injunctive relief is granted, the Plaintiffs' have not clearly carried their burden of persuasion.

Accordingly, and upon due consideration, the Plaintiffs' Motion for Preliminary Inunction (Doc. 2) is DENIED.[12]

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 9th day of December, 2005.

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record

---

[12] Given the Court's denial of the requested injunctive relief, Defendant 4 Points ore tenus motion to strike the Affidavit of Rebecca D. Mock, which the Plaintiffs submitted during the hearing, is denied as moot.