UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

OWNER-OPERATOR INDEPENDENT
DRIVERS ASSOCIATION, INC., ICEHOUSE
CARTAGE EXPRESS, INC., and GRAIN
EXPRESS, INC., individually, and on behalf
of all others similarly situated,

                    Plaintiffs,

-vs-                                                      Case No.  5:05-cv-440-Oc-10GRJ

4 POINTS LOGISTICS, LLC and
COMPOSITE ANALYSIS GROUP, INC.,
d/b/a LIPSEY MOUNTAIN SPRING WATER,

                    Defendants.
_____/

## O R D E R

        This class action concerning an alleged breach of contract and breach of federal

regulations brought by individual trucking companies (the "Individual Plaintiffs") and the

Owner-Operator Independent Drivers Association, Inc. ("OOIDA") is before the Court for

consideration of three motions: (1) Defendant 4 Points Logistics, Inc.'s ("4 Points") motion

to dismiss Count I of the Complaint (Doc. 10), to which the Plaintiffs have responded (Doc.

18); (2) Defendant Composite Analysis Group, Inc.'s d/b/a Lipsey Mountain Spring Water

("Lipsey Water") motion to dismiss Counts IV and V of the Amended Complaint (Doc. 67),

to which the Plaintiffs have responded (Doc. 72); and (3) Lipsey Water's motion for

sanctions (Doc. 46), to which the Plaintiffs have responded (Doc. 51).

The motions are ripe for review and the Court concludes that 4 Points' motion to dismiss is due to be denied, Lipsey Water's motion to dismiss is due to be granted in part and denied in part, and Lipsey Water's motion for sanctions is due to be denied.

## Background and Facts

The litigation arises out of the aftermath of Hurricane Katrina and an effort by the State of Florida to provide fresh water and ice to victims of the storm in the Florida Gulf Coast Area.

### State of Florida – Lipsey Water

On September 1, 2005, the State of Florida and Lipsey Water entered into a contract for the sale by Lipsey Water of 500-1000 truck loads of bottled water for $9,310,000, to be delivered F.O.B. Stennis NASA Center in Mississippi, transportation charges prepaid (the "Water Contract").  The Water Contract provided for a payment of $1,600 per day per truck for drayage and holding the freight on 24-hour standby at Stennis for eventual  movement to hurricane victims.  On September 4, 2005, Lipsey Water entered into a second contract with the State of Florida for the sale of 25,000,000 pounds of ice for $8,750,000 to be delivered F.O.B. Stennis NASA Center in Mississippi, transportation charges prepaid (the "Ice Contract").  The Ice Contract also provided for a payment of $1,600 per day per truck for drayage and holding the freight on 24-hour standby at Stennis for eventual  movement to hurricane victims.   The Ice Contract provided an additional $403 per truck per day payment for the "Rental of Mobile Refrigeration Units."

2

<u>Lipsey Water – 4 Points</u>

Shortly after entering into the Water and Ice Contracts with the State, Lipsey Water entered into an arrangement with 4 Points, a federally licensed transportation broker, whereby 4 Points would secure the equipment and services of motor carriers to transport the ice and water Lipsey Water was obligated to deliver under its agreements with the State.

<u>4 Points – Individual Plaintiffs</u>

In furtherance of its arrangement with Lipsey Water, 4 Points entered into various contracts with the Individual Plaintiffs and other putative class members to pay them, among other amounts, $60 per hour for "drayage" (or, as the parties call it in their contracts, "Detention/Delay").  According to the Plaintiffs, there was no hour limitation on this payment.  In other words, 4 Points would compensate the Plaintiffs for up to 24 hours per day for an unlimited period of time, until the delay ceased.  4 Points, however, asserts that this Detention/Delay payment did have an hour limitation, and on September 22, 2005, 4 Points notified all trucking companies and drivers that their detention fees would be limited to $60 per hour for up to 10 hours per day.

The Plaintiffs, two small business trucking firms and a national trade association of professional truck drivers, initiated this action on October 26, 2005 with the filing of a class action Complaint (Doc. 1).  On April 17, 2006, the Plaintiffs filed the first Amended Complaint (Doc. 66).  The Plaintiffs purport to represent a putative class of hundreds of small business trucking firms and drivers who entered into contracts with 4 Points.

3

The Plaintiffs assert that they seek damages as well as declaratory and injunctive relief, although the Plaintiffs' do not specify in their Amended Complaint the relief they seek with regard to each count.  The prayer for relief at the end of the Amended Complaint seeks class certification, three separate declaratory judgments, two orders compelling action on the part of the Defendants, "a judgment in favor of the plaintiff class on all counts of the First Amended Complaint," the creation of "a common fund made up of all damages awarded to class members," and reasonable attorneys' fees.[1]

---

[1] The detailed prayer in the Amended Complaint requests the Court to:

(1) Certify a class comprised of motor carriers who provided services for the transportation of water and ice under Field Purchase Order ("FPO") numbers 144528 and 144541 entered into between Lipsey Mountain Spring Water and the State of Florida;

(2) Enter a judgment declaring that Defendant 4 Points Logistics, LLC has a material beneficial interest in shipments by Lipsey Mountain Spring Water under FBO 144541 and may not charge or receive compensation for brokerage services in connection with said shipments;

(3) Enter and order compelling 4 Points Logistics, LLC to produce all records of the brokered transactions involving Contracting Plaintiffs;

(4) Enter a judgement declaring that class members providing services under FPO 144541 are third party beneficiaries under Lipsey Water's agreement to pay $403.00 per truck per day for rental on "Mobil Refrigerated Units;"

(5) Enter a judgment declaring that class members are third party beneficiaries under Lipsey Water's agreements with the State of Florida (FPO numbers 144528 and 144541) to provide drayage services for $1600.00 per truck per day;

(6) Enter a judgment in favor of the plaintiff class on all counts of the First Amended Complaint;

(7) Enter an order compelling Lipsey Mountain Spring Water to deposit with the Court all sums received by it from the State of Florida under FBO's 144528 and 144541 pending resolution of the rights of the respective parties herein;

(8) Create a common fund made up of all damages awarded to class members;

(9) Award class counsel reasonable attorneys' fees under Counts I and II pursuant to 49 U.S.C. § 14704(e);

(10) Award class counsel a reasonable attorneys' fee out of the common fund; and

(11) Award such other relief as this Court may deem to be just and proper.

## Motion to Dismiss Standard

In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate."[2]  As the Supreme Court declared in Conley v. Gibson, a complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."[3] Thus, if a Complaint "shows that the Plaintiff is entitled to any relief that the Court can grant, regardless of whether it asks for the proper relief," it is sufficiently plead.[4]  The Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim."[5]  Instead, all that is required is that the claimant set forth a "short and plain statement of the claim" sufficient to give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests."[6]  However, "while notice pleading may not require that the pleader allege a 'specific fact' to cover each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations

---

[2] Int'l Erectors, Inc. v. Wilhoit Steel Erectors Rental Serv., 400 F.2d 465, 471 (5th Cir. 1968).

[3] Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L. Ed. 80 (1957); see also Cook & Nichol, Inc. v. The Plimsoll Club, 451 F.2d 505 (5th Cir. 1971).

[4] Dotschay v. Nat'l Mut. Ins. Co., 246 F.2d 221 (5th Cir. 1957).

[5] Conley, 355 U.S. at 47.

[6] Id.

respecting all the material elements necessary to sustain a recovery under some viable legal theory."[7]

## Discussion

### Defendant 4 Point's Motion to Dismiss Count I

4 Points moves for dismissal of Count I of the Plaintiffs' Amended Complaint because it fails to state a claim for which relief can be granted.  In Count I, the Plaintiffs allege that 4 Points provided a significant non-brokerage service to Lipsey Water by procuring ice from individual vendors in an effort to satisfy Lipsey Water's obligations under the Ice Contract.  Because 4 Points allegedly provided these non-brokerage services, the Plaintiffs assert that 4 Points acquired a "material beneficial interest" in the ice shipments and, accordingly, pursuant to 49 C.F.R. § 371.9(a), is precluded from charging or receiving compensation from the Individual Plaintiffs for brokerage services.  49 C.F.R. § 371.9(a) provides that, "A broker shall not charge or receive compensation from a motor carrier for brokerage services where: (1) The broker owns or has a material beneficial interest in the shipment."

In its motion, 4 Points argues that the Complaint must be dismissed because it is self-defeating in that the allegations of the Complaint provide a valid and complete defense to the claim.  Specifically, 4 Points contends that despite the Plaintiffs' "unsupported" statement that 4 Points provided "significant non-brokerage services" and acquired a "material beneficial interest" in the ice,  the factual allegations in the Complaint establish

---

[7] Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotations omitted).

that 4 Points is a broker that provided nothing but brokerage services.  The Plaintiffs respond that 4 Points' argument misses the point; it is precisely brokers to which 49 C.F.R. § 371.9(a) applies, and the Plaintiffs properly alleged a violation of that regulation because they assert that 4 Points acquired a material beneficial interest in the ice, and impermissibly charged brokerage fees for the shipment of that ice.

It appears clear to the Court that the Plaintiffs have met the very minimal pleading requirements necessary to survive a Rule 12(b)(6) motion to dismiss.  The Plaintiffs' allegation that 4 Points acted as a broker is not self-defeating, but is necessary to a cause of action based upon a violation of  49 C.F.R. § 371.9(a).  That regulation prevents "a broker" from receiving compensation for "brokerage services," when it has a "material beneficial interest in the shipment."  Here, the Plaintiffs have alleged that 4 Points is a broker that impermissibly charged brokerage fees for brokerage services related to the shipment of goods in which 4 Points had a material beneficial interest.  Moreover, the Plaintiffs have alleged that the material beneficial interest arises out of certain non-brokerage services that 4 Points allegedly performed in regards to procuring the ice that was shipped.  Thus, the Court cannot say that it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."[8]

---

[8] See Conley, 355 U.S. at 45-46.

<u>Defendant Lipsey Water's Motion to Dismiss Counts IV and V</u>

Lipsey Water moves for dismissal of Counts IV and V of the Plaintiffs' Amended Complaint because the Amended Complaint allegedly fails to state a claim for which relief can be granted.[9]  In addition, Lipsey Water asserts that OOIDA should be dismissed as a Plaintiff from Counts IV and V because OOIDA lacks standing as an associational plaintiff to bring those claims.

    <u>a.</u>   <u>Motion to Dismiss Count IV</u>

In Count IV of the Amended Complaint, titled "Breach of Contract by Lipsey Water," the Plaintiffs allege that the Individual Plaintiffs are third party beneficiaries of the Water and Ice Contracts.  The Plaintiffs alleged in Count IV that the Water and Ice Contracts provided for drayage and rental of refrigeration units on a "per truck per day" basis and, as such, the Water and Ice Contracts "primarily and directly expressed the intent to benefit the provider of drayage services" and "the provider of refrigeration units."  The Plaintiffs further allege in Count IV that "Lipsey Water is legally obligated to pay all [Individual] Plaintiffs and others similarly situated, $1,600 per truck per day for drayage and $403 per truck per day rental" for the refrigeration units - the full amounts promised by the State of Florida to Lipsey Water for drayage and rental of refrigeration units.

---

[9] Prior to the filing of the Amended Complaint, Lipsey Water filed a motion to dismiss the Complaint (Doc. 15), to which the Plaintiffs' responded (Doc. 23), Lipsey Water replied (Doc. 25), and the Plaintiffs Sur-replied (Doc. 33).  Because following the filing of the Amended Complaint Lipsey Water filed a new motion to dismiss, to which the Plaintiffs responded, Lipsey Water's initial motion to dismiss will be denied as moot.

Lipsey Water, however, asserts as a matter of law that the Individual Plaintiffs are not third party beneficiaries of the Water and Ice Contracts.  Lipsey Water argues that neither the contracts at issue, nor the contracting parties, expressed a clear intent to primarily and directly benefit the Individual Plaintiffs.  Moreover, Lipsey Water contends that the "per truck per day" language in the Water and Ice Contracts is merely a unit of measurement that reflects a maximum allocation, and is not a binding commitment in favor of the truckers.

The Plaintiffs respond that the "intent to benefit the third party is determined by the provisions of the contract," and that it is the "intention of the parties, gleaned from the contract itself, [not the subjective intent of the parties that] is determinative."  (emphasis in the Plaintiffs' opposition).  Accordingly, the Plaintiffs assert that Lipsey Water and the State of Florida "expressly and directly manifested an intent to benefit the motor carriers providing the drayage services and the refrigeration equipment necessary for delivery of the ice and water under the two contracts" by the use of the contract language specifying "per truck per day" rates for drayage and rental of refrigeration units.  The Plaintiffs concede that "it was certainly hurricane victims, not the truckers, who were the intended beneficiaries of the contracts."  Even so, the Plaintiffs contend that the Individual Plaintiffs are also third party beneficiaries to the Water and Ice Contracts because the Individual Plaintiffs "primarily and directly provided [the drayage and rental services] as specified in the contracts with Florida," and that the intent to benefit the Individual Plaintiffs need not

9

be the exclusive object of the Water and Ice Contracts, but only need be "amongst such objects."

The Court concludes that the Plaintiffs' argument does not support their claim of breach of contract under a third party beneficiary theory.  It is undisputed that under Florida law, a party may have an action for breach of contract as a third party beneficiary if the contracting parties primarily and directly intended to benefit the third party.[10]  It is equally well-settled under Florida law that, "The intention of the contracting parties, gleaned from the contract itself, is determinative."[11]  Further, if the contract does not reveal an intent to primarily and directly benefit a third party "any benefit from the contract reaped by the third party is merely 'incidental,' and the third party has no legally enforceable right in the subject matter of the contract."[12]

Here, the only allegation that the contracting parties - Lipsey Water and the State of Florida - intended primarily and directly by execution of the Water and Ice Contracts to benefit the Individual Plaintiffs is the specification in those contracts that the State was to

---

[10] Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1283 (11th Cir. 2004); Nova Info. Sys., Inc. v. Greenwich ins. Co., 365 F.3d 996, 1003 (11th Cir. 2004).

[11] City of Tampa v. Thornton-Tomasetti, P.C., 646 So. 2d 279, 282 (Fla. 2d DCA 1994); see also Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co., 328 F. Supp. 2d 1319, 1344 (S.D. Fla. 2004).

[12] Bochese v. Town of Ponce Inlet, 405 F.3d 964, 983-85 (11th Cir. 2005); see also Int'l Erectors, 400 F.2d at 472 ("The Florida courts require that there must have been an intent to benefit the third party at the time the promisor and promisee entered into the contract in order for the third party to be classified as either a donee or a creditor beneficiary. If no such intention to benefit is found in the contract, the third party is an incidental beneficiary and has no rights enforceable against the promisor under the contract.").

pay Lipsey Water $1600 "per truck per day" for drayage and $403 "per truck per day" for rental of refrigeration units.  Taken as true, the Court finds that the allegations contained in Count IV of the Amended Complaint are insufficient to state a claim under a theory that the Individual Plaintiffs were third party beneficiaries to the contract between Lipsey Water and the State.  The mere specification of a "per truck per day" payment rate in the Water and Ice Contracts does not confer third party beneficiary status on the truckers.[13]

Further, the Court is convinced that the clear import of the "per truck per day" language is merely the description of a unit of measurement for the contractual obligations of the contract parties who clearly did not know the length of truck standby time necessary for the relief mission at hand.  In addition, the Court cannot find - as the Plaintiffs assert - that the agreement of Lipsey Water and the State of Florida concerning the amount of compensation Lipsey Water was to receive for drayage services created a third party beneficiary right in the drayage service providers to the entire amount promised to Lipsey Water for those services.  The Plaintiffs received compensation for their drayage services from 4 Points, and to the extent that the amount the Plaintiffs received from 4 Points is unsatisfactory, they should seek redress under the contracts to which they are a party. Accordingly, in light of the fact that the Plaintiffs have already amended their Complaint and

---

[13] See Bochese, 405 F.3d at 983-85 (finding that the "mere fact that Mr. Bochese's land was incorporated into [the contracting parties'] PUD pursuant to the Fourth Contract Amendment, without any expression of an intent to confer a benefit on Mr. Bochese, is wholly insufficient to establish that he was the intended beneficiary of the agreement").

because the Court determines that further amendment would be futile,[14] the Court finds that Count IV must be dismissed with prejudice.[15]

    b.    Motion to Dismiss Count V

In Count V of the Amended Complaint, titled "Lipsey Water is Primarily Liable For All Transportation and Detention Charges," the Plaintiffs allege that: (1) Lipsey Water agreed with the State of Florida to deliver the ice and water "FOB Destination - Transportation Charges Prepaid;" (2) Lipsey Water delegated to 4 Points its duty under the contract to arrange for transportation and storage of the ice and water; and (3) despite that delegation, Lipsey Water remains primarily liable for all freight, drayage and layover or detention charges arising from the delivery of the ice and water.  Moreover, the Plaintiffs allege in Count V that 4 Points has failed to pay the Individual Plaintiffs the drayage fees they are owed because Lipsey Water has refused to tender the necessary funds to 4 Points. Further, the Plaintiffs' allegations include calculations that purport to show that Lipsey Water is retaining a substantial profit on the transportation charges for the ice and water.

In its motion, Lipsey Water asserts that Count V of the Amended Complaint must be dismissed because it fails to state a recognizable cause of action.  The Plaintiffs respond that as the shipper of the ice and water, Lipsey Water is primarily liable for payment to

---

[14] Interpretation of the contract presents an issue of law, not an issue of fact.

[15] As a final note on Count IV, it is well-settled that a third party beneficiary's right to recover damages from a breaching party cannot extend beyond the rights of the contracting party's entitlement to damages.  The Court is not convinced that the party the Plaintiffs seek to stand in the shoes of - the State of Florida - has any claim to damages from Lipsey Water.  Thus, the Plaintiffs have no right to recover damages.

carriers, and that such an allegation is "sufficient to place Lipsey Water on notice of the claim." Further, in its opposition to Lipsey Water's motion to dismiss, the Plaintiffs assert that Count V is based on agency principles. Lipsey Water is liable as 4 Points' principal for the contracts that 4 Points entered into with the Individual Plaintiffs in the course of the alleged agency relationship.

The Court concludes that the Plaintiffs have not made sufficient allegations to support their ill-defined claim or cause of action in Count V of the Amended Complaint.[16] In so finding, the Court reminds the Plaintiffs that "it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."[17] In their opposition to Lipsey Water's motion to dismiss, the Plaintiffs assert that their claim is based on cases in which a shipper was held primarily liable to carriers for freight charges based upon the identification of the shipper on the bill of lading. Namely, the Plaintiffs rely on Louisville & N.R. Co. v. Central Iron & Coal Co., 265 U.S. 59 (1924) and its progeny for the proposition that - as the Plaintiffs state it - "the shipper has primary responsibility for payment" of freight charges. As an initial matter, the Louisville Court only stated the rule of law that, "Ordinarily, the person from whom the goods were received for shipment assumes the

_____

[16] Despite being represented by counsel, the filing of an Amended Complaint, the filing of a response and sur-reply to Lipsey Waters initial motion to dismiss, and the filing of a response in opposition to Lipsey Water's second motion to dismiss, the Plaintiffs still have not clearly defined the cause of action they seek to assert in Count V.

[17] Roe, 253 F.3d at 683.

obligation to pay the freight charges, and his obligation is ordinarily a primary one."[18] However, the <u>Louisville</u> Court found that the obligation for payment of freight charges may be altered by contract and, moreover, the Court held that, "On these facts, the trial court was justified in finding that the [shipper] <u>did not</u> assume the primary obligation to pay the freight charges."[19]

Further, the cases cited by the Plaintiffs involve the interpretation of bills of lading, which are characterized as both receipts for shipment and contracts between the shipper and freight carrier.[20]  Here, the Plaintiffs make no allegations that the bills of lading in this case identify Lipsey Water as the shipper and, thus, make it primarily liable to the Individual Plaintiffs as freight carriers.  Instead, the allegations in the Amended Complaint and the exhibits attached to it make clear that a contractual relationship existed between 4 Points and the Individual Plaintiffs, whereby 4 Points was invoiced for the drayage services and refrigeration unit rental provided by the Individual Plaintiffs.[21]  Thus, this case is factually distinguishable from those cases cited by the Plaintiffs because there is no bill of lading

---

[18] <u>Louisville</u>, 265 U.S. at 68.

[19] <u>Id.</u> (emphasis added).

[20] <u>See</u> <u>S. Pacific Transp. Co. v. Commercial Metals Co.</u>, 456 U.S. 336, 342 (1982) ("The bill of lading is the basic transportation contract between the shipper-consignor and the carrier; its terms and conditions bind the shipper and all connecting carriers."); <u>United Shipping Co. v. Nat'l Auto. & Rubber Mktg., Inc.</u>, 474 N.W. 2d 835 (Minn. App. 1991) (same).

[21] For example, paragraph 18 of the Amended Complaint alleges that, "4 Points agreed to pay [the Individual] Plaintiffs $60.00 per hour for 'Detention/Layover'" and Exhibits 4 through 13 to the Amended Complaint contain invoices in which the Individual Plaintiffs bill 4 Points for drayage services and rental of refrigeration units, with no mention whatsoever of Lipsey Water.

that identifies Lipsey Water as the shipper that would "ordinarily" make Lipsey Water primarily liable for freight charges.  Moreover, the single bill of lading that is attached to the Plaintiffs' Amended Complaint[22] identifies East Bay Ice Co. - not Lipsey Water - as the shipper of the ice.[23]

In addition, the Plaintiffs' ad hoc agency argument is not supported by the allegations in the Amended Complaint.[24]   Under Florida law, three elements are essential to the existence of an agency relationship: "(1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent."[25]  The only allegation in Count V that may arguably evoke an element of agency is the assertion that "Lipsey Water delegated responsibility for arranging for the transportation and storage of ice and water under its contracts with the State of Florida to 4 Points."  However, even if the Court interprets the allegations in Count

---

[22] Exhibit 14.

[23] Interestingly, the Plaintiffs concede in the paragraph 19 of the Amended Complaint that they "were never informed that Defendant Lipsey Water had contracted with the State of Florida for $1,600.00 per day for drayage plus an additional $403.00 per day for 'Rental of Mobile Refrigeration Units in connection with ice shipments.'"

[24] The primary legal theory supporting the claim in Count V appears from the cases cited by the Plaintiffs to be a contract-based theory arising out of bills of lading.  The Court describes the Plaintiffs' argument that Count V is based on agency principles as ad hoc because this alternative argument appears to have been formulated as an afterthought to the Plaintiffs' initial legal theory and because the Court takes note of the evolving nature of the agency argument in the Plaintiffs' filings with the Court opposing Lipsey Water's motions to dismiss.  The alternative nature of the legal arguments the Plaintiff uses to support Count V underscores its ill-defined nature.

[25] Goldschmidt v. Holman, 571 So. 2d 422, 424 (Fla. 1990).

V to assert that Lipsey Water acknowledged that 4 Points would act for it, and inferred 4 Point's acceptance of the undertaking, the Amended Complaint contains no allegation whatsoever that Lipsey Water exercised control over the actions of 4 Points.[26]  Again, "it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."[27] Accordingly, in light of the fact that the Plaintiffs' have already amended their Complaint and because the Court determines that further amendment would be futile, the Court finds that Count V must be dismissed with prejudice.

    c.    <u>Whether OOIDA lacks standing as an associational plaintiff.</u>

Lipsey Water asserts that OOIDA should be dismissed as a plaintiff from Counts IV and V because OOIDA lacks standing as an associational plaintiff to bring those claims. In order to bring a claim on behalf of its members, an association such as OOIDA must satisfy the three-prong test articulated in <u>Hunt v. Washington State Apple Advertising Commission</u>:[28]

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own rights; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

---

[26] <u>See</u> <u>State v. Am. Tobacco Co.</u>, 707 So.2d 851, 854 (Fla. 4th DCA 1998) ("The issue of control is critical to the determination of agency.")

[27] <u>Roe</u>, 253 F.3d at 683.

[28] 432 U.S. 333, 343, 97 S. Ct. 2434, 2441, 55 L. Ed. 2d 383, 392 (1977).

Here, Lipsey Water moves to dismiss OOIDA from Counts IV and V based on the argument that OOIDA can never fulfil the third-prong of the <u>Hunt</u> test because the claims for liability and damages presented in Counts IV and V require particularized proof from each of the Individual Plaintiffs.   The Plaintiffs respond that OOIDA satisfies the <u>Hunt</u> test for associational standing because Counts IV and V seek declaratory and injunctive relief in addition to damages and, as such, seek relief that does not require the individualized participation of the members of the association.

The Court finds that this issue is mooted by its findings that Counts IV and V must be dismissed with prejudice.  In addition, because Counts IV and V were the only counts in the Amended Complaint directed towards Lipsey Water, and because both of those counts are dismissed with prejudice, Lipsey Water is dismissed from this case.

Defendant Lipsey Water's Motion for Sanctions

Lipsey Water's motion for Rule 11 sanctions is based upon the disclosure, subsequent to the filing of the initial motions to dismiss, that the individual plaintiff Northstar Express ("Northstar") and 4 Points entered into a contract in which Northstar agreed that "it is limited to collecting [freight or accessorial] charges only from BROKER," i.e. 4 Points. Following this disclosure, the Court entered an Order granting the Plaintiffs' Voluntary Agreed Dismissal of the Individual Claims of Northstar Express (Doc. 69).  Lipsey Water contends that Northstar's inclusion as an individual plaintiff is sanctionable because there was no reasonable factual basis for an action against Lipsey Water by Northstar in light of the contract language.

17

Lipsey Water's motion asserts that the Court should sanction the Plaintiffs and their counsel by (a) striking the Plaintiffs' claims against Lipsey Water, (b) withdrawing the pro hac vice admission the Plaintiffs' counsel; and (c) appropriately sanctioning Plaintiffs and their counsel.  Because the Court has dismissed both counts in the Amended Complaint that attempted to allege causes of action against Lipsey Water, the first request for relief in the motion for sanctions is moot.

In any case, the Court finds that Rule 11 sanctions are not appropriate here.  The Plaintiffs assert that they had no knowledge of the contract entered into by Northstar that contained the language limiting recovery to 4 Points until that contract was produced by counsel for the Defendants in their notice to file a motion for Rule 11 sanctions. Moreover, the Plaintiffs voluntarily dismissed Northstar from the case following the disclosure of the contract.  Thus, under the circumstances of this case, Rule 11 sanctions are not warranted.

### Conclusion

Upon due consideration and for the forgoing reasons, it is ordered that:

(1)     Defendant 4 Points Logistics, Inc.'s motion to dismiss Count I of the Complaint (Doc. 10) is DENIED;

(2)     Defendant Composite Analysis Group, Inc.'s d/b/a Lipsey Mountain Spring Water ("Lipsey Water") motion to dismiss Counts IV and V of the Amended Complaint (Doc. 15) is DENIED as moot;

(2)     Defendant Composite Analysis Group, Inc.'s d/b/a Lipsey Mountain Spring Water ("Lipsey Water") motion to dismiss Counts IV and V of the Amended Complaint (Doc. 67) is GRANTED to the extent that Counts IV and V are dismissed with prejudice for failure to state a claim for which relief can be granted, and DENIED in all other respects;

(3)     Defendant Composite Analysis Group, Inc.'s d/b/a Lipsey Mountain Spring Water ("Lipsey Water") is hereby DISMISSED from this action;

(4)     Lipsey Water's motion for sanctions (Doc. 46) is DENIED; and

(5)     The Clerk is directed to withhold entry of judgment until the case is disposed of as a whole.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 6th day of September, 2006.

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record

Maurya McSheehy

19