UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

OWNER-OPERATOR INDEPENDENT
DRIVERS ASSOCIATION, INC.,
ICEHOUSE CARTAGE EXPRESS, INC.,
GRAIN EXPRESS, INC., and NORTHSTAR
EXPRESS, individually, and on behalf of all
others similarly situated,

                    Plaintiffs,

-vs-                                                    Case No.  5:05-cv-440-Oc-10GRJ

4 POINTS LOGISTICS, LLC and
COMPOSITE ANALYSIS GROUP, INC.,
d/b/a LIPSEY MOUNTAIN SPRING
WATER,

                    Defendants.
_____/

## **O R D E R**

        This putative class action concerning an alleged breach of contract and breach of

federal regulations brought by individual trucking companies, (the "Individual Plaintiffs"),

and the Owner-Operator Independent Drivers Association, Inc., ("OOIDA"), is before the

Court for consideration of three motions: (1) Defendant 4 Points Logistics, Inc.'s, ("4

Points"), Dispositive Motion for Summary Judgment as to Counts I, II and III of the

Amended Complaint, (Doc. 81), to which the Plaintiffs have responded, (Doc. 124); (2) the

Plaintiffs' Motion for Voluntary Dismissal of Counts I and II of the First Amended Complaint,

(Doc. 130), to which 4 Points has responded, (Doc. 132); and (3) the Plaintiffs' Amended

Motion for Class Certification, (Doc. 118), to which 4 Points has responded, (Docs. 98, 122).

The motions are ripe for review and the Court concludes that 4 Points' Motion for Summary Judgment is due to be granted as to Count III of the Amended Complaint and denied as moot in all other respects, the Plaintiffs' Motion for Voluntary Dismissal of Counts I and II of the Amended Complaint is due to be granted, and the Plaintiffs' Amended Motion for Class Certification is due to be denied as moot.

## **FACTUAL BACKGROUND**

This case arises from the aftermath of Hurricane Katrina and an effort by the State of Florida to provide fresh water and ice to victims of the storm in the Florida Gulf Coast Area.  The majority of the salient facts are undisputed and were previously recited in the Court's September 6, 2006 Order concerning the Defendants' motions to dismiss.  (Doc. 105).  The Court will therefore rely in large part on the factual recitation from its prior Order.

On September 1, 2005, the State of Florida and Composite Analysis Group, Inc., d/b/a Lipsey Mountain Spring Water, ("Lipsey Water"), entered into a contract for the sale by Lipsey Water of 500-1000 truck loads of bottled water for $9,310,000, to be delivered F.O.B. Stennis NASA Center in Mississippi, transportation charges prepaid (the "Water Contract").  The Water Contract provided for a payment of $1,600 per day per truck for drayage and holding the freight on 24-hour standby at Stennis for eventual movement to victims of Hurricane Katrina.  On September 4, 2005, Lipsey Water entered into a second

2

contract with the State of Florida for the sale of 25,000,000 pounds of ice for $8,750,000 to be delivered F.O.B. Stennis NASA Center in Mississippi, transportation charges prepaid (the "Ice Contract").  The Ice Contract also provided for a payment of $1,600 per day per truck for drayage and holding the freight on 24-hour standby at Stennis for eventual movement to storm victims.  The Ice Contract provided an additional $403 per truck per day for the "Rental of Refrigeration Units."

Shortly after entering into the Water and Ice Contracts with the State, Lipsey Water entered into an arrangement with 4 Points, a federally licensed transportation broker, whereby 4 Points would secure the equipment and services of motor carriers across the nation to transport the ice and water Lipsey Water was obligated to deliver under its agreements with the State of Florida.

In furtherance of this arrangement, 4 Points entered into numerous contracts with the Individual Plaintiffs and other putative class members to transport the ice and water to Stennis.  Other than variations for the names and addresses of the trucking companies, as well as the mileage distances, the contracts are virtually identical.  Each contract was entitled "Carrier Rate Confirmation," and listed the trucking company's name, the point of origin, and the final delivery destination.  They also contained a "Rate Computation" sheet, which listed the mileage distance and a transportation charge of $3.00 per mile, as well as a charge of $1.25 per mile for "deadhead miles."  The sheets also included a line for "Dentention/Layover" charges, which listed 0 hours at $60.00 per hour.

3

All Parties agree that the number of detention hours was intentionally left blank on the Rate Computation sheet because at the time the contracts were executed, no one knew how much detention time would accrue.  The Plaintiffs, however, contend that there was a oral agreement that 4 Points would pay for every single hour of detention time accrued, up to twenty-four (24) hours per day.  4 Points contends that there was no such agreement, and instead ultimately determined it would pay each trucking company up to ten (10) hours per day for detention.  The Parties do not dispute that ten (10) hours per day for detention charges is standard industry practice.

Each of the motor carriers who contracted with 4 Points to transport ice and water to the hurricane victims were detained at the Stennis delivery site for much longer than anticipated, some for more than ten days.  Once they delivered their shipments, the motor carriers submitted invoices to 4 Points for services rendered.  The invoices included charges for every single hour of detention at Stennis, up to twenty-four (24) hours per day, at a rate of $60 per hour.  4 Points refused to pay the detention charges, and instead tendered payment to each of the motor carriers which included payment for detention charges of only up to ten (10) hours per day at $60 per hour.[1]  4 Points tendered payment to the motor carriers via company check, which contained the express language that "Endorsement of this check by Payee or its Agent constitutes PAYMENT IN FULL."   Every single motor carrier who received such a check accepted and cashed the payment.

---

[1]There is no dispute over any other charges arising from these contracts.

## **PROCEDURAL HISTORY**

On October 26, 2005, the Individual Plaintiffs and OOIDA filed a class action complaint in this Court seeking declaratory and injunctive relief and monetary damages against 4 Points and Lipsey Water.  (Doc. 1).  The Plaintiffs filed an Amended Complaint on April 17, 2006, (Doc. 66), which consisted of five claims: (1) a claim that 4 Points unlawfully charged or received compensation from motor carriers for brokerage services in violation of applicable federal regulations (Count I); (2) a claim that 4 Points withheld and/or failed to maintain records in connection with their brokered transactions for the movement of ice and water on behalf of Lipsey Water, in violation of applicable federal regulations (Count II); (3) a state law claim for breach of contract against 4 Points (Count III); (4) a state law claim for breach of contract against Lipsey Water (Count IV); and (5) a claim that Lipsey Water remains primarily liable for all of the Plaintiffs' transportation and detention charges (Count V).  The Plaintiffs also purport to represent a putative class of hundreds of small business motor carriers and drivers who entered into contracts with 4 Points to transport Lipsey Water's ice and water.

On February 14, 2006, the Plaintiffs filed a motion for class certification.  (Doc. 47). On September 6, 2006, prior to ruling on class certification, the Court entered an Order granting Lipsey Water's earlier-filed motion to dismiss with prejudice all claims against it. (Doc. 105).  The Court also denied 4 Points' motion to dismiss Count I.   Based on the Court's ruling on the motions to dismiss, the Court directed the Plaintiffs to file an amended

motion for class certification, which it did on January 19, 2007.  (Doc. 118).  4 Points responded to the motion on January 29, 2007.  (Doc. 122).

During this same period, 4 Points also filed a motion for summary judgment as to all claims on July 17, 2006.  (Doc. 81).  The Plaintiffs filed their response in opposition on February 7, 2007.  (Doc. 124).[2]

## DISCUSSION

As this case presently stands, there are only three claims remaining, all of which are asserted against 4 Points alone.  There are also three pending motions, two of which were filed very close in time to each other.  Because the Court finds that resolution of the Plaintiffs' motion for voluntary dismissal and 4 Points' motion for summary judgment will dispose of all remaining issues in this case, the Court will address these two motions first.

I.    Plaintiff's Motion for Voluntary Dismissal of Counts I and II

The Plaintiffs seek to voluntarily dismiss with prejudice Counts I and II of their Amended Complaint - the two federal regulation claims - with each side to bear its own fees and costs.[3]  The Plaintiffs do not provide any explanation for its desired course of

---

[2]The lengthy delay between 4 Points' motion for summary judgment and the Plaintiffs' response is due in part to the operation of the Court's electronic filing system.  Although the Plaintiffs properly filed a timely motion under Fed. R. Civ. P. 56(f) requesting additional time to conduct discovery prior to responding to 4 Points' motion, the Plaintiffs' motion was entered into the electronic docket as a "response," instead of as a motion.  As such, the Plaintiffs' motion was not listed on any of the Court's internal reports and the Court did not realize that a motion had been filed until several months had passed, resulting in a *de facto* granting of the Plaintiffs' requested relief.

[3]The Plaintiffs previously notified the Court of its intent to seek voluntary dismissal of these
(continued...)

action, other than to state that dismissal of these two counts will not affect the facts and law applicable to Count III, the breach of contract claim.   4 Points objects to the voluntary dismissal of Counts I and II, contending that it will be substantially prejudiced if the Court does not dispose of these claims on their merits.

Rule 41 of the Federal Rules of Civil Procedure provides the legal framework for the voluntary dismissal of claims.  At the early stages of litigation, before any adverse party has filed an answer or motion for summary judgment, a plaintiff may dismiss claims without order of court.  See Fed. R. Civ. P. 41(a)(1)(i).  Where, as in this case, an adverse party has answered the complaint and/or moved for summary judgment, a voluntary dismissal may be accomplished by only one of two methods: (1) a stipulation of dismissal signed by all parties to the action; or (2) "by order of the court and upon such terms and conditions as the court deems proper."  See Fed. R. Civ. P. 41(a)(1)(ii), (2).  It is this second method that is at issue here.

Voluntary dismissals, with or without prejudice, or generally favored in this Circuit absent some evidence that the defendant will suffer plain prejudice.  Fisher v. Puerto Rico Marine Management, Inc., 940 F.2d 1502, 1502-03 (11th Cir. 1991).  Such prejudice must be more than the mere prospect of a second lawsuit.  Id.   In evaluating whether such prejudice exists, the Court must "weigh the relevant equities and do justice between the parties in each case, imposing such costs and attaching such conditions to the dismissals

---

[3](...continued)
claims in its response to 4 Points motion for summary judgment.  See Doc. 124, p. 2, n. 1.

as are deemed appropriate." <u>Potenberg v. Boston Scientific Corp.</u>, 252 F.3d 1253, 1255-56 (11th Cir. 2001). The Court "should keep in mind the interests of the defendant, for Rule 41(a)(2) exists chiefly for the protection of defendants. <u>Id.</u> at 1503.

In this case, the only prejudice 4 Points identifies is its ability to obtain attorney's fees and costs.[4] According to 4 Points, if it were to prevail at summary judgment on Counts I and II of the Amended Complaint, it would be entitled to attorney's fees and costs. To deny 4 Points the opportunity to recover these monetary amounts by merely dismissing these two claims would be both unfair and substantially prejudicial, particularly in light of the time and effort 4 Points has expended in defending itself against these claims.

The Court is not persuaded. Attorney's fees are not awarded in a vacuum and are not a matter of right in all cases. Rather, there must be some legal authority establishing an entitlement to fees in the first place. As 4 Points correctly states, Counts I and II are based on various provisions of the Interstate Commerce Commission Termination Act, ("ICCTA"), and its implementing regulations that create a statutory entitlement to attorney's fees. <u>See</u> 49 U.S.C. § 14704(e). Where 4 Points errs is in its reading of that particular statute. Section 14704 as a whole provides remedies and relief solely to persons (such as independent owner-operators) who are injured by carriers or brokers. Indeed, the title of

---

[4]In a footnote, 4 Points appears to argue that it has suffered prejudice due to the time and effort it has expended in defending against Counts I and II, particularly with respect to discovery and motions practice. The Court is not persuaded by these arguments; all three remaining claims against 4 Points revolve around the same contract and the same dispute over the terms of that contract. It is therefore clear that the majority of the discovery conducted in this case would apply almost equally to all three claims.

8

the section states exactly that: "§ 14704.  Rights and remedies of persons injured by carriers or brokers."  The statute describes in detail the procedures by which a party injured by a broker or carrier may seek relief through either a civil action or a complaint with the Department of Transportation, and specifies the amount of liability and damages that may be recovered - there is no mention of relief to a prevailing broker or carrier.  Subsection (e), which provides an entitlement to attorney's fees merely states that "[t]he district court shall award a reasonable attorney's fee under this section.  The district court shall tax and collect that fee as part of the costs of the action."   Nothing in the text of that sub-section or any other part of § 14704 provides any relief to a prevailing defendant.

Notably, 4 Points has not presented any legal authority to support its position,[5] and the Court has been unable to locate any favorable legal support.  Instead, the only legal authority on this issue holds quite the opposite.  When faced with this exact same question, the Eighth Circuit Court of Appeals recently held that the purpose and legislative history behind the ICCTA clearly establish that there is no fee-shifting provision within § 14704(e) such that a defendant who successfully defeats charges brought by independent owner-operators could obtain fees from those owner-operators.  To do so would simultaneously establish a private remedy for owner-operators and create a unique and formidable barrier

---

[5]The only decision 4 Points references to support its position is West v. Town of Jupiter Island, 146 F. Supp. 2d 1293 (S. D. Fla. 2000), a district court decision with no binding precendential effect on this Court and which is factually inapposite.  In West, the district court was faced with a defendant who successfully defeated a claim brought under the Americans With Disabilities Act.  The ADA expressly provides for attorneys fees to the prevailing defendant. 146 F. Supp. 2d at 1301.  No such statutory provision exists here.

to its attainment.  See Owner-Operator Independent Drivers Ass'n., Inc. v. New Prime, Inc., 398 F.3d 1067 (8th Cir. 2005); see also Fulfillment Services, Inc. v. United Parcel Service, Inc., No. CV 05-538 TUC DCB, 2006 WL 3330783 (D. Ariz. Nov. 14, 2006).  Thus, even if 4 Points were to prevail on summary judgment on Counts I and II, 4 Points would not be entitled to attorney's fees, and therefore cannot be substantially prejudiced by the Plaintiffs' voluntary dismissal of these claims.[6]  Moreover, the fact that the Plaintiffs seek dismissal with prejudice removes any concern that the Plaintiffs may at some later date attempt to re-litigate these claims and ameliorates to some extent the time spent on discovery. See Stephens v. Georgia Dept. Of Transp., 134 Fed. Appx. 320 (11th Cir. 2005) (voluntary dismissal with prejudice appropriate where parties have already conducted extensive discovery); McCants v. Ford Motor Co., Inc., 781 F.2d 855 (11th Cir. 1986) (same).  The Plaintiffs' motion for voluntary dismissal with prejudice of Counts I and II of the Amended Complaint will be granted.

II.     4 Points Motion for Summary Judgment

Having dismissed the two federal regulation claims, the only claim remaining for consideration on summary judgment is Count III, the Plaintiffs' breach of contract claim. 4 Points contends that there are no material facts in dispute and that it is entitled to summary judgment based on its affirmative defense of accord and satisfaction.  The Court agrees.

---

[6]The Court does not pass judgment at this time on the entitlement, if any, to attorney's fees and costs with respect to the Plaintiffs' breach of contract claim.

A.    *Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party."  Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  As the Supreme Court held in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.  If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."  Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987).  The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

B.    *Accord and Satisfaction*

The Parties agree that Florida law applies to the Plaintiffs' breach of contract claims, as well as to 4 Points' affirmative defense of accord and satisfaction.  "A defense of accord and satisfaction involves a two-step process of proof that (1) the parties mutually intended to effect settlement of an existing dispute by entering into a superseding agreement, . . . and (2) there was actual performance with satisfaction of the new agreement which acted

to discharge the debtor's prior obligation." Rudick v. Rudick, 403 So. 2d 1091,1093-94 (3d DCA 1981) (internal citations omitted). In short, under Florida law an accord and satisfaction must contain the elements of a normal contract, which include offer, acceptance, and consideration. Air Products and Chemicals, Inc. v. Louisiana Land and Exploration Co., 806 F. 2d 1524, 1529 (11th Cir. 1986).

In this case, 4 Points argues that accord and satisfaction applies because it settled a dispute over the amount owed the Plaintiffs for detention charges by tendering payment to each Plaintiff and putative class member, who cashed the checks without reservation. In situations such as these, where accord and satisfaction involves the settlement of a monetary debt, the elements of the defense are set forth by Florida statute:

> If a person against whom a claim is asserted proves that that person in good faith tendered an instrument[7] to the claimant as full satisfaction of the claim, that the amount of the claim was unliquidated or subject to a bona fide dispute, and that the claimant obtained payment of the instrument, . . . the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

Fla. Stat. § 673.3111(1), (2).[8]

---

[7]An "instrument" is defined as a "negotiable instrument," and include checks. See Fla. Stat § 673.1041(2).

[8]There are two exceptions to this doctrine: (1) where the person receiving the negotiated instrument informs the other party that all communications concerning disputed debts are to be sent to a designated individual and the designated individual does not receive any communications or negotiated instruments; and (2) where the person receiving the negotiated instrument tenders repayment within 90 days after receipt of the initial payment. Fla. Stat § 673.3111(3). Neither of these exceptions apply to this case.

4 Points contends that its dispute with the Plaintiffs and subsequent payments to them fall squarely within the parameters of § 673.3111 and thus provides 4 Points with a complete defense to the Plaintiffs' breach of contract claim.  More specifically, 4 Points claims that: (1) it tendered its checks to the Plaintiffs in good faith and as full satisfaction of the disputed detention charges; (2) the amount of the detention charges was in dispute; (3) the Plaintiffs actually received the tendered payment; and (4) the checks contained a conspicuous statement to the effect that the checks were tendered as full satisfaction of the claims.  See, e.g. St. Mary's Hospital, Inc. v. Schocoff, 725 So. 2d 454, 456 (Fla. 4th DCA 1999) ("An accord and satisfaction results as a matter of law only when the creditor accepts payment tendered on the expressed condition that its receipt is deemed to be a complete satisfaction of a disputed issue.")

The Plaintiffs do not dispute that they received payment from 4 Points in the form of negotiated instruments, nor do the Plaintiffs dispute that the checks contained a conspicuous statement that they were tendered as full satisfaction of all claims.  They do not even attempt to argue that they did not cash the checks, or cashed them with a reservation of rights or under duress.  Instead, the Plaintiffs focus on two points: (1) that the payments were not made to settle a bona fide disputed debt; and (2) that the payments were not made in good faith.

### 1.   Bona Fide Disputed Debt.

The Plaintiffs argue that 4 Points' payment of ten hours of detention charges was not a disputed debt, but rather a "liquidated amount" that was "undisputedly owed to Plaintiffs."

According to the Plaintiffs, it was always the intention of both Parties that 4 Points would compensate all of the trucking companies for at least ten hours per day of detention.  The only dispute is over whether detention pay was to be capped at ten hours per day or would be paid for up to 24 hours per day - in other words the dispute is over hours eleven through twenty-four.  Because 4 Points only tendered payment for the allegedly agreed-to ten hours per day, the Plaintiffs claim 4 Points merely paid an undisputed pre-existing debt, which cannot constitute sufficient consideration for accord and satisfaction under Florida law. See Air Products, 806 F. 2d at 1529; Advanced Tech. Assoc., Inc. v. Herley Ind., Inc., No. 96-132, 1998 WL 633983, * 6 (E.D. Pa. Aug. 24, 1998).

Although the Plaintiffs correctly state the law in this area, they completely misrepresent the facts.  In order to reach the Plaintiffs' conclusion, the Court would have to add several new terms to the contract for which there is not a shred of support.  There is nothing in the written contracts themselves which give even a hint that the Parties agreed to a payment of at least ten hours per day for detention - the Plaintiffs even admit this in their brief.[9]  Rather, the contracts themselves are clear - *zero* hours to be paid at $60 per hour.  And, while the Parties agree that the number of detention hours was intentionally left blank on each contract because at the time the contracts were executed, there was no way

---

[9]See Plaintiffs' Opposition, p. 7, n. 18.

of knowing how many hours would accrue, none of the extrinsic evidence the Plaintiffs have presented establishes that a minimum payment of ten hours was agreed to.[10]

The Plaintiffs also appear to rely on the fact that industry standards provide for a maximum of ten hours per day for detention charges as proof that 4 Points' payments did not cover disputed amounts.  This is a red herring.  The Plaintiffs have not provided any legal support establishing that the creation of an industry standard also creates a contractual right to the receipt of that standard in all circumstances.[11]  And even if this were the case, the Plaintiffs themselves argue that the industry standards governing detention and all other transportation regulations and service limitations were expressly waived during this time period, given the state of emergency along the Gulf Coast.[12]  Thus, when faced with an explicit written contract, and a lack of any potentially admissible or relevant

---

[10]The Plaintiffs have submitted deposition excerpts from one former 4 Points employee, as well as from the owners of the two named Plaintiff trucking companies.  Assuming for purpose of argument that this testimony would be admissible at trial, it does not prove that 4 Points agreed to pay a minimum of 10 hours per day for detention.  These deposition excerpts merely establish that at the time the contracts were executed, no one knew how many hours of detention would accrue, and that payment could range from zero to twenty-four hours per day.  See e.g. Deposition of Rebecca Mock, pp. 63, 67-68, 194-95, 247-48 ("Mock Dep."); Deposition of Michael Drechsel, pp. 80, 130-31, 207 ("Dreschel Dep."); and Deposition of Thomas Wilson, pp. 107, 119-20 ("Wilson Dep.").

[11]It does not appear that the Plaintiffs could establish such a position.  While Florida law does look to industry standards for guidance or evidence of reasonableness, the Court has been unable to find any situations where a Florida court determined that an industry standard guaranteed a specific right, privilege, or monetary payment to an entity.

[12]See Plaintiffs' Opposition, pp. 8-9; Wilson Dep., pp. 107, 119-20.

extrinsic evidence to change any of the terms of the contract, the Plaintiffs can only prove their conclusion by simply restating it.  This is not sufficient.[13]

Because the undisputed facts demonstrate that a dispute existed over whether detention charges would be paid for up to twenty-four hours per day, and because the Plaintiffs have failed to present any evidence demonstrating that they were entitled to a <u>minimum</u> of ten hours per day detention charges, the Court concludes that a bona fide dispute existed for which 4 Points tendered payment.  This element of the accord and satisfaction defense has been met.

　　2.　Good Faith

The Plaintiffs also argue that 4 Points did not tender their payments in good faith, thereby rendering them invalid for accord and satisfaction purposes.  In particular, the Plaintiffs contend that 4 Points refused to tender any payment under the contracts unless the Plaintiffs accepted detention chargers of only ten hours per day, and demanded that the Plaintiffs redraft their invoices to reflect only ten hours per day for detention.  As further evidence of 4 Points' bad faith, the Plaintiffs point to the following facts: (1) that 4 Points waited until all of the trucking companies had arrived at Stennis and were unable to leave before informing them that detention charges would be limited to ten hours per day; (2) that

---

[13]The fallacy of the Plaintiffs' argument can readily be seen when the amount of detention charges paid by 4 Points is reduced to under ten hours per day.  If, for example, 4 Points had decided to tender payment for only 3 hours per day, clearly this would be payment of a disputed amount and thus satisfy this element of accord and satisfaction.  To hold that accord and satisfaction does not exist simply because 4 Points chose to tender a greater payment up to industry standard does not make sense.

Harold Bibby, managing member and principal of 4 Points, stated to his employees that he intended to place the special endorsement on the back of all 4 Points checks to resolve any potential claims by the Plaintiffs; and (3) 4 Points pressured the Plaintiffs to take the lower payments by threatening to go out of business and/or file for bankruptcy protection.

Assuming these facts are true, the Court finds that they do not amount to a lack of good faith.  They merely establish the existence of a dispute, which 4 Points offered to resolve by paying up to ten hours per day for detention charges.  They also establish that 4 Points intended to use the payments to resolve all disputes, and sought legal advice to ensure that it would be done properly.[14]  The fact that 4 Points may or may not have been teetering on the brink of bankruptcy does not demonstrate a lack of good faith.  If anything, it shows a desire by 4 Points to ensure that the trucking companies receive at least some measure of payment before 4 Points' assets were tied up in bankruptcy proceedings.  And, the fact that 4 Points paid each trucking company up to the maximum industry standard

---

[14]The Plaintiffs' reference to an unpublished decision from the Eastern District of Pennsylvania, relying on Virginia state law is unavailing. In Advanced Technology Associates, Inc. v. Herley Industries, Inc., No. 96-132, 1998 WL 633983 (E.D. Pa. Aug. 24, 1998), the defendant withheld all payments for all services rendered while negotiations were ongoing with respect to the disputed payment, and then forced payment on the plaintiff for amounts that they were absolutely due, but only on the condition that the plaintiff abandon the remainder of its claim.  1998 WL 633983, * 6.  This is not the case here. 4 Points has not withheld payments while the dispute over the detention charges has been proceeding, in fact, the Plaintiffs sought injunctive relief to prevent 4 Points from paying the trucking companies with its special endorsement during the course of this litigation.  As discussed above, 4 Points also did not force payments on undisputed amounts onto the Plaintiffs - there is no undisputed amount of the detention charges.

supports a finding of reasonableness and good faith.[15]  4 Points could have easily chosen to pay nothing, or a lesser amount.

Rather, it seems in this case that the trucking companies are simply seeking to have a second bite at the apple.  They have already received payment for ten hours per day, as well as payment for all other charges related to the Ice and Water Contracts.  It is clear that when each Plaintiff accepted and negotiated 4 Points' check, (some with the advice of counsel), they did so with the understanding that each check was tendered only on the express condition that it be accepted in full satisfaction of each Plaintiffs' claim. Of this there can be no question.  If the Plaintiffs did not believe they were receiving the full amount they were entitled to they should have simply returned the checks and proceeded with this lawsuit.[16]

> When a creditor negotiates the tendered check with knowledge of the debtor's intent, whether through discussions, correspondence, or unambiguous language on the check, he is then bound to the agreement and cannot later turn around and sue for the remaining balance due under the former dispute. If a creditor does not assent to the condition, then the proper course of action is to return the check. Simply put, the creditor cannot have his cake and eat it too.

Burke Co. v. Hilton Development Co., 802 F. Supp. 434 (N. D. Fla. 1992).

---

[15]The UCC Comments to Fla. Stat. § 673.3111 define "good faith" as "not only honesty in fact, but the observance of reasonable commercial standards of fair dealing."

[16]The Plaintiffs have also argued that they were forced to accept 4 Points' checks because of their own financial difficulties.  This argument is belied by the deposition testimony of the principals of both named Plaintiffs.  See Wilson Dep., pp. 182-83; Drechsel Dep., pp. 146, 203-04.

The Court therefore finds that 4 Points tendered its checks to each Plaintiff in good faith, and to resolve a disputed debt.  Summary judgment is therefore due to be granted in 4 Points' favor.

III.    Plaintiffs' Amended Motion for Class Certification

In its motion for summary judgment, 4 Points represents that it is has tendered checks containing the conspicuous statement that "Endorsement of this check by Payee or its Agent constitutes PAYMENT IN FULL" to each and every named Plaintiff and putative class member, and that every check has been cashed.[17]  If this is true, then it would resolve all remaining claims in this case, thereby rendering class certification moot. Although 4 Points has not presented any evidence to support this representation, the Plaintiffs have not provided any evidence or argument challenging it.  Accordingly, the Court will accept as undisputed fact 4 Points' representation that all named Plaintiffs' and putative class members' breach of contract claims have been resolved via accord and satisfaction.  The Plaintiffs' amended motion for class certification will therefore be denied as moot.

---

[17]See 4 Points' Motion for Summary Judgment, p. 3.

## CONCLUSION

Accordingly, upon due consideration, it is hereby ORDERED and ADJUDGED as follows:

(1)    The Plaintiffs' Motion for Voluntary Dismissal of Counts I and II of the First Amended Complaint, (Doc. 130), is GRANTED.  Counts I and II, (the federal regulatory claims), are hereby DISMISSED WITH PREJUDICE.

(2)    Defendant 4 Points Logistics, LLC's Dispositive Motion for Final Summary Judgment as to Counts I, II, and III, (Doc. 81), is GRANTED IN PART AND DENIED IN PART.  Summary judgment is granted in Defendant 4 Points' favor as to Count III of the Amended Complaint (the breach of contract claim).  In all other respects, the motion for summary judgment is DENIED AS MOOT.

(3)    The Plaintiffs' Amended Motion and Memorandum of Law in Support of Motion for Class Certification, (Doc. 118), is DENIED AS MOOT.

(4)    Because all claims in this case are now resolved, the Clerk is directed to enter judgment in accordance with this Order, and in accordance with the Court's September 6, 2006 Order.  (Doc. 105).

(5)     The Court will resolve Defendant Lipsey Water's pending motion for attorneys' fees and costs, (Doc. 111), at a more appropriate time, contemporaneously with any motions Defendant 4 Points may file seeking attorneys' fees and costs as may still be available under applicable law.

20

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 12th day of July, 2007.

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record